IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE

JUL 08 2010

CIRCLE Y CONSTRUCTION, INC.,  )
  )
    Plaintiff,  )
  )
  )  CIVIL ACTION FILE
v.  )
  )  NUMBER 1:08-cv-1010-TCB
WRH REALTY SERVICES, INC. and )
WRH HIDDEN COLONY, LLLP,  )
  )
    Defendants.  )

## ORDER AND JUDGMENT

### I.  Summary

This case illustrates the perils of litigation. A contractor entered into a written contract with the owner of an apartment project pursuant to which the contractor performed some renovation work at the project. After the contractor completed the work, one or more of the owner's employees/agents asked the contractor to perform additional work, which it did. When the contractor invoiced the owner $60,566.30 for that additional work, the owner, in effect, told the contractor to pound sand.

The owner contended that it didn't have to pay for the additional work because (1) the parties did not execute a written change order for that work (and the parties' original contract said that all changes to the scope of work had to be in writing), and (2) the additional work was not authorized by the owner's employee designated in the original contract as the person with whom the contractor should communicate when dealing with the owner. The owner felt that the contractor's additional work was worth about $37,000 and made the contractor a "take-it-or-leave-it" offer to pay that amount, which the contractor refused. Instead of paying the $37,000 and then fighting over the approximately $23,000 difference, the owner refused to pay anything unless the contractor dropped its claim.

The contractor refused to blink. It insisted on the full $60,566.30 for the additional work that it did, threatening to add a claim for its attorneys' fees if the matter went to litigation.

Like a riverboat gambler, the owner was undeterred, sticking to its defenses, apparently convinced that they barred any possible recovery by the contractor—even though the owner indisputably benefited from the contractor's additional work. Instead of paying the $37,000 and negotiating over the remaining $23,000, the owner remained intransigent

and took the risk of having to pay the $60,566.30 plus interest and the contractor's attorneys' fees.

Evidently, the owner was not aware that under Georgia law parties to a contract can, by their conduct, waive provisions of the contract—including provisions that (1) disavow the ability to change the contract orally, (2) require contract changes to be in writing, and (3) require that one party deal with only one designated employee of the other party. The owner also seemed ignorant of the fact that the contract (and its requirement that changes be written) arguably did not cover the additional work. Nor did the owner seem to recognize that the theory of quantum meruit has long been used in construction cases to allow a contractor to recover for additional work performed outside the scope of the parties' original contract.

So the parties went to trial over $60,566.30 plus the contractor's claim for attorneys' fees. The trial was supposed to last about two days. Instead, it went a tortuous four. In the end, the contractor cleaned house.

## II.   **Procedural Background**

On March 14, 2008, Plaintiff Circle Y Construction, Inc. filed this action against Defendants WRH Realty Services, Inc. and WRH Hidden Colony, seeking to recover the $60,566.30 for renovation work that it

3

performed at the Hidden Colony Apartments located in Doraville, Georgia.[1]

Circle Y asserted claims against Defendants for breach of contract (both

oral and written), quantum meruit, unjust enrichment, and attorneys' fees.

On August 14, 2009, Defendants moved for summary judgment.

On November 6, 2009, the Court granted in part and denied in part

Defendants' motion, allowing the following claims to proceed to trial:

(1) breach of written contract against WRH Hidden Colony; (2) breach of

oral contract against both Defendants; (3) quantum meruit against both

Defendants; (4) unjust enrichment against both Defendants; and

(5) attorneys' fees against both Defendants.

On March 17, 2010, the case came before the Court for a bench trial.

The parties had estimated that it would take two or three days to resolve

this $60,566.30 dispute.  In fact, it took four days, which forced the trial to

be interrupted due to scheduling conflicts. The saga concluded on April 13,

2010.

---

[1] If you're wondering how a $60,000 breach of contract case wound up in federal court, here is the explanation. Circle Y is a Georgia corporation with its principal place of business in Georgia. Both Defendants are Florida entities whose principal places of business are in Florida. Thus, the parties are diverse. On June 20, 2008, Defendants moved to dismiss the complaint [16], arguing that the Court lacked subject matter jurisdiction because Circle Y sought less than $75,000 in damages. On November 13, 2008, the Court denied the motion [24], finding that Circle Y's request for attorneys' fees, when added to its claim for $60,550.30 in damages, was sufficient to satisfy the $75,000 diversity jurisdiction minimum.

Circle Y's main contention at trial was that it should be paid for the additional renovation work that it performed because Defendants' agents expressly requested that it perform such work. According to Circle Y, Defendants took several actions that amounted to a waiver of the parties' AIA form contract's requirement that all changes in the scope of work had to be in writing and authorized by Grahame Brown, Defendants' designated representative.

By contrast, Defendants contended that Circle Y failed to follow the letter of the contract. They argued that they should not have to pay Circle Y for the additional work because Brown did not authorize the additional work and there was no written change order evidencing their assent to pay for that work. Defendants also argued that none of their agents who requested the additional work had authority to do so.

Following closing arguments, the Court orally announced its verdict, finding entirely in favor of Circle Y. The Court explained that this "is a wholesale victory for Circle Y, because I believe the evidence clearly compels that conclusion. It is breathtaking to me what [Defendants] did to [Circle Y]. I think [Defendants] used [Circle Y], they manipulated [Circle Y], they tried to hide behind these legal contracts. I don't think there's a

jury in America that would sanction that type of approach to this relationship that they had."

The Court specifically found that Defendants' refusal to pay what they owed Circle Y was motivated by bad faith. Thus, the Court announced that the judgment would include Circle Y's attorneys' fees, pursuant to O.C.G.A. § 13-6-11. Moreover, article 12.14 of the parties' contract specifically authorized an award of attorneys' fees to the prevailing party as follows: "The substantially prevailing party in any action brought to enforce or interpret this Agreement shall be awarded and receive its costs and reasonable attorney's fees (including those of in-house counsel), including for any appellate review." The Court allowed the parties to brief the issue of the amount of attorneys' fees and costs to be awarded so that a single judgment could be entered.

## III.  **Findings of Fact**

The Court finds the following facts from the evidence presented at trial. In July 2007, Defendant WRH Hidden Colony acquired the Hidden Colony Apartments. At the time of the acquisition, the apartment complex had an occupancy rate of about fifty percent and was in need of substantial renovation work. WRH Hidden Colony retained its subsidiary company,

6

WRH Realty Services, to serve as the property manager for the renovation project.

Circle Y is a small, family-owned construction and repair company that is operated by Greg Young and his wife Cindy.

In July 2007, Bud Phillips, a regional director for WRH Realty Services, contacted Mr. Young to inquire whether Circle Y could perform maintenance work and other repairs at the project.  On behalf of WRH Realty Services, Phillips hired Circle Y to assist with service calls and make certain units "rent-ready" during July and August 2007.  Defendants paid Circle Y for this initial maintenance work.

Sometime in July 2007, Phillips determined that approximately ten unoccupied units required more work to make them "rent-ready."  He solicited bids for this work, including from Circle Y.

On or around August 2, 2007, Circle Y submitted its bid.  Thereafter, Circle Y continued to complete service calls and make other unoccupied units rent-ready under the direction of Phillips and Barbara Young, who was WRH Realty Services' on-site property manager.

WRH Hidden Colony accepted Circle Y's bid, and on August 24, 2007, the two parties entered into a written, AIA form contract prepared by WRH

7

Hidden Colony.   Although the parties had originally discussed Circle Y performing renovation work on ten units, the contract stated that the scope of work was for nine units, specifically units 7D, 7C, 53, 22, 15, 3B, 6A, 3E and 2A.  The original amount of the contract was $75,995.

The contract designated Brown, vice president of construction services for WRH Realty Services, as the person responsible for administrating the contract on behalf of WRH Hidden Colony.  In the event that a change developed in the scope of work, the contract provided that all "extra or changed work shall be authorized by a written Change Order in the form attached hereto as Exhibit D."  The contract specified that Brown would be "the only party on behalf of [Defendants] who is authorized . . . to approve changes in Scope of Work, and/or Contract documents, and/or scheduling and/or cost."

During the trial, Greg Young testified that after he signed the contract, Brown requested that Circle Y perform renovation work in unit 2B, which Circle Y had bid upon but was not included in the written contract.   Young also testified that Brown instructed Circle Y to add a furnace in unit 22, even though that work—like the work performed in unit 2B—was not included in the scope of the written contract.

Brown testified evasively that he did not recall giving such oral instructions to Greg Young.   However, it is undisputed that on November 13, 2007, Hidden Colony paid Circle Y's invoice number 071030-1, which was for $84,220, and this invoice included the original contract amount of $75,995 plus the amounts owed for unit 2B and the furnace in unit 22.

Significantly, neither Brown nor anyone else with Defendants ever requested that Circle Y submit a written change order in connection with this extra work.  WRH Hidden Colony paid Circle Y the balance on invoice number 071030-1 even though Circle Y had not complied with the written change order requirement in the parties' AIA form contract.

At the end of August 2007, during a walk-through of the project, Joseph Terry, Circle Y's superintendent, showed Brown that a substantial portion of the ceiling in unit 7C had collapsed.  While some drywall and ceiling work on unit 7C was covered by the original scope of the written contract, the ceiling collapse resulted in substantial additional work. Brown instructed Terry to clean up and repair the collapsed ceiling. Circle Y's work, at the direction of Brown, amounted to a complete repair of the ceiling that went beyond the original scope of the parties' written

9

contract.   Importantly, in connection with the ceiling work in unit 7C, Brown neither requested nor required a written change order, but instead instructed Terry to invoice WRH Realty Services for the repair.  Defendants steadfastly refused to pay for this extra work.

After his August 2007 visit, Brown never returned to the project while Circle Y was completing its work under the contract.   Rather, Brown designated Waldy Sanchez, a regional director for WRH Realty Services, as the person in charge of directing the work of the contractors at the project, including Circle Y, which meant that Circle Y was supposed to direct its communications to Defendants through Sanchez.

Indeed, prior to the written contract being executed in July 2007, Brown had indicated that Sanchez was his point of contact at the project. Phillips, Greg Young, and Circle Y's bookkeeper, Hal Stewart, all attended a July 2007 meeting and testified consistently as to the important role that Brown indicated that Sanchez would play at the project.

Between August 24 and October 30, 2007, the date upon which Circle Y invoiced WRH Realty for the work in dispute, Sanchez visited the project at least four times and ordered Circle Y to perform additional work. Sanchez testified that he had conversations with Brown about the work that

Circle Y was doing at the project.    Brown never repudiated Sanchez's authority as project manager, including his ability to order additional work from Circle Y.

Circle Y offered convincing testimony from Phillips, Greg Young, and Terry that Sanchez also told Terry to follow the instructions of Barbara Young and Phillips regarding these ten units, as they were the individuals who were accepting these units, i.e., approving the work upon completion. Phillips was at the project once a week, and Barbara Young was there almost every day.    Brown never repudiated Phillips's or Barbara Young's authority to accept these units, which necessarily included the ability to order any additional work necessary to make the units acceptable to Defendants.

Phillips testified on behalf of Circle Y that he specifically told Circle Y to perform substantial additional work, including repairing the floors in all ten units, painting and repairing the inside of the cabinets in all ten units, and repairing or replacing ceramic soap dishes, ceramic towel bars and bath sinks in certain units.

Between August 24 and October 30, 2007, Sanchez, Phillips, Barbara Young, and Barbara Young's on-site personnel requested various work on

11

units 7D, 7C, 53, 22, 15, 3B, 2B, 6A, 3E and 2A that went beyond the original scope of the written contract. It was understood by Circle Y that time was of the essence with respect to this additional work because tenants were ready to move into these ten units.

On October 30, 2007, Circle Y sent WRH Realty Services an invoice in the amount of $60,566.30 for the extra work that had been verbally requested. The invoiced amount was consistent with the previous course of dealings between the parties whereby Phillips and Circle Y had agreed that Circle Y would submit invoices for its materials, labor, and a modest amount for profit, which would be paid by Defendants.

After Circle Y submitted the invoice for the additional work, Brown wrote two letters to Greg Young, one on November 8, 2007, and another on December 14, 2007. In both letters, Brown denied Defendants' obligation to pay the invoice on the grounds that no written change order was signed by him regarding the work for which Circle Y sought payment. Defendants never claimed that the work was not in fact performed or in any way was substandard.

Over the next several months, Circle Y made repeated unsuccessful efforts via letter, electronic correspondence, and phone to obtain payment

from Defendants. Circle Y provided additional documentation in support of its claim for payment, including photographs, a breakdown by unit of the work performed, and linear footages of certain work performed.

At the time of trial, Defendants had made no payments toward the invoice, despite admitting that they had benefited from the work that Circle Y performed for over two years.

Although Defendants attempted at trial to demonstrate that the invoiced amount of $60,566.30 was excessive, the Court was not persuaded. The Court finds that the invoiced amount of $60,566.30 is the reasonable value for the services rendered by Circle Y and is at least the amount of benefit received by Defendants.

In addition, the evidence at trial proved that Circle Y installed seven stoves, five refrigerators, and three dishwashers for which it mistakenly did not invoice Defendants. Circle Y is entitled to recover for this work as well consistent with its previous course of dealings with Defendants. Specifically, consistent with the evidence adduced at trial, Circle Y is

entitled to recover $2,513.00 for seven stoves, $2,499.00 for five refrigerators, and $686.34 for three dishwashers.[2]

In sum, the value of the benefit that Defendants received for all of the extra work, including the un-invoiced stoves, refrigerators, and dishwashers, amounted to at least $66,264.64.

Moreover, the Court notes that it assessed the credibility of all of the witnesses who testified and found that Circle Y's were highly credible and that Defendants' witnesses were evasive and to a certain extent not credible. There was no credible or effective refutation of the testimony of one of Circle Y's most important witnesses, WRH Realty Services' former regional director Phillips, or of the most damaging testimony by Circle Y's other witnesses.

## IV. **Conclusions of Law**

Circle Y's breach of contract claim is comprised of two theories: (1) Defendants breached the terms of the written contract, as it became

---

[2] Although Circle Y's complaint did not include a claim for recovery of these charges, Defendants did not object at trial to Circle's Y's introduction of evidence in support thereof. Thus, pursuant to Fed. R. Civ. P. 15(b), the complaint was deemed to be amended to conform to the evidence. Moreover, Fed. R. Civ. P. 54(c) provides that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."

14

modified by the parties' conduct, or (2) Defendants breached a series of oral contracts relating to the additional work that was performed.

## A.   **Breach of Written Contract**

Circle Y acknowledges that the written contract it entered into with WRH Hidden Colony governed the original scope of the project and that it set a price of $75,995 for the work, which was fully paid by WRH Hidden Colony.  However, Circle Y argues that when various WRH Realty Services' employees, including Sanchez, Barbara Young, and Chad Williams, requested that Circle Y perform additional work, the written contract was modified to include that work.  According to Circle Y, WRH Hidden Colony's failure to pay for that additional work constitutes a breach of the written contract, as modified.  The Court agrees.

When Defendant WRH Realty Services' employees, including Brown, Sanchez, Phillips, Barbara Young, and Williams, requested that Circle Y perform additional work, the written contract dated August 24, 2007 was modified in several respects to include the requested work that went beyond the original scope of the written contract.  *Accord Am. Car Rentals, Inc. v. Walden Leasing, Inc.*, 220 Ga. App. 314, 315, 469 S.E.2d 431, 433

(1996) ("Parties can modify their agreement through their course of conduct and regular business practices").

Under article 2.5 of the contract, WRH Realty Services had authority to bind WRH Hidden Colony. Thus, when WRH Hidden Colony failed to pay for the additional work requested by WRH Realty Services' employees, WRH Hidden Colony breached the written contract as modified.

Defendants have argued that the written contract contained specific terms governing how modifications could be made—in writing in the form of a change order. However, the Court finds that these terms were waived by the course of conduct between the parties, specifically the addition of and payment for unit 2B and the furnace in unit 22, and Brown's oral request to complete drywall and ceiling work in unit 7C, all without requiring a written change order. Based upon the course of dealing between the parties, the Court finds that Defendants waived the written change order requirement. *Am. Car Rentals,* 220 Ga. App. at 316, 469 S.E.2d at 433 ("Waiver of a written modification requirement in a contract may be established through the course of conduct between the parties.").

Defendants have also relied upon the "no waiver" provision in the written contract. The Court rejects this argument because WRH Hidden

16

Colony through the course of conduct of the employees of WRH Realty Services, waived the "no waiver" provision in the written contract. *See J.E.M. Enters., Inc. v. Taco Pronto, Inc.*, 145 Ga. App. 573, 575, 244 S.E.2d 253, 254 (1978) ("A provision against waiver of contractual rights may itself be waived").

Throughout this action, Defendants have also relied heavily upon article 12.2 of, and exhibit J to, the written contract, which provide that Brown was the only person who had authority on behalf of Defendants to modify the contract.  However, the evidence adduced at trial proved that this provision was also waived by WRH Hidden Colony.  A contracting party can "impliedly waive strict adherence to a provision in a contract that requires a written modification by a certain officer." *Harper v. Liberty Nat'l Life Ins. Co.*, 645 F. Supp. 260, 264 (M.D. Ga. 1986).  In light of the job responsibilities possessed by Sanchez, Phillips, Barbara Young and Williams, in addition to Brown's representations to Circle Y that reasonably led it to believe that Brown intended to delegate some of his authority, all of these individuals had actual or apparent authority to request changes in the original scope of work.

Thus, the Court finds that Sanchez, Phillips, Barbara Young, and Williams had apparent authority to do everything usual and necessary for the accomplishment of the contract's main objective, to get certain units rent-ready, which necessarily included ordering additional work. *Accord Arrington & Blount Ford, Inc. v. Jinks*, 154 Ga. App. 785, 787, 270 S.E.2d 27, 29 (1980) ("Authority to an agent to do a thing generally includes authority to do everything usual and necessary for the accomplishment of the main object"); *see also Lipsey Motors v. Karp Motors, Inc.*, 194 Ga. App. 15, 17, 389 S.E.2d 537, 539 (1989) ("If a person imposes upon another duties and responsibilities involving the management and control of a matter of business, the agent will be presumed to have the authority to represent his employer in any matter within the scope of his apparent authority.").

It is also significant that none of the repairs or installations that Sanchez, Phillips, Barbara Young, and Williams requested was materially different from the types of tasks that had been commonly performed by Circle Y during its course of dealings with Defendants in July and August 2007.

18

Moreover, even if Sanchez, Phillips, Barbara Young, and Williams did not have actual or apparent authority to order this additional work, Defendants ratified the actions of these employees. *See* O.C.G.A. § 10-6-52 ("A ratification by the principal shall relate back to the act ratified and shall take effect as if originally authorized"); *see also Burke Cnty. Bd. of Educ. v. Raley*, 104 Ga. App. 717, 721, 123 S.E.2d 272, 275 (1961).

As project manager, Sanchez was responsible for communicating with Brown, which included providing updates on Circle Y's work. Sanchez was Brown's on-site intermediary. Brown's subsequent silence and Defendants' acceptance and rental of the units amounted to ratification of all of Circle Y's acts performed at the direction of Sanchez, Phillips, Barbara Young, and Williams. Additionally, even after this dispute arose, Defendants made payments to Circle Y for service call work and work related to making units rent-ready that Phillips and Barbara Young requested in August 2007. This is further evidence that Defendants ratified the authority of Phillips and Barbara Young to order additional work.

Accordingly, the Court concludes that WRH Hidden Colony breached the written contract as modified and that Circle Y is therefore entitled to judgment in the principal amount of $66,264.64, which includes recovery

of the $60,566.30 sought by the extra work invoice plus $5,698.34 for the un-invoiced appliances, as well as prejudgment interest pursuant to O.C.G.A. § 7-4-7.  As the substantially prevailing party, Circle Y is further entitled to receive its costs and reasonable attorneys' fees pursuant to article 12.14 of the written contract.  In addition, based upon the Court's finding of bad faith on the part of Defendants in refusing to pay their debt to Circle Y, the Court finds that Defendants are liable to Circle Y for its expenses of litigation, including reasonably attorneys' fees, pursuant to O.C.G.A. § 13-6-11.

**B.     Breach of Oral Contract**

Alternatively, to the extent that there is any legal defect in Circle Y's breach of written contract theory, Circle Y is entitled to judgment in its favor against both Defendants under its oral contract theory.

Circle Y argues that the alleged requests for extra work by Brown, Sanchez, Phillips, Barbara Young, and Williams, coupled with Circle Y's performance of the work, resulted in a series of oral contracts with Defendants for the payment of such work.  The Court agrees.

The Court rejects Defendants' argument that no oral contract could be formed because the written contract between Circle Y and WRH Hidden

Colony exclusively governed the approval and performance of all additional work performed at the project.   *Accord State Highway Dep't v. Wright Contracting Co.*, 107 Ga. App. 758, 764, 131 S.E.2d 808, 813 (1963).

The Court is not persuaded by Defendants' argument that because the written contract was characterized as a "turnkey" contract, all later requested work was covered within the original scope of the written contract for the price stated in the contract.  If Defendants were correct, the written contract would not have included article 8, which allows for the possibility that the scope of work might be modified.

Furthermore, the trade usage of the term "turnkey" does not contemplate that Circle Y would not be entitled to additional money for additional work that it performed on the nine units.  *See Glassman Constr. Co. v. Md. City Plaza, Inc.*, 371 F. Supp. 1154, 1158 (D. Md. 1974) ("Defendant's intention that all additional work, including changes and additions subsequent to the contract date, was to fall within the turn-key concept is of a wider scope than the trade usage.").

Under Circle Y's oral contract theory, which the Court accepts, the WRH Realty Services employees who ordered the extra work on the ten units had authority to do so because the parties had a history of entering

into oral agreements with one another, based upon the instructions of Phillips and Barbara Young in July and August 2007.   During July and August 2007, Circle Y performed all of its work on the basis of these oral agreements and was compensated for that work without a written agreement.  Consequently, oral agreements were formed when WRH Realty Services' other employees ordered worth that Circle Y performed.

Additionally, because WRH Realty Services' employees failed to disclose that they were acting on behalf of WRH Hidden Colony, WRH Realty Services may be held liable under Circle Y's breach of oral contract claim. *See* O.C.G.A. § 10-6-54.

The Court thus concludes that there is clear and convincing evidence that WRH Hidden Colony and WRH Realty Services breached a series of oral contracts with Circle Y.  Accordingly, Circle Y is entitled to judgment in the same amounts previously stated, plus expenses of litigation pursuant to O.C.G.A. § 13-6-11.

## C.   **Quantum Meruit and Unjust Enrichment**

If for some reason Circle Y's breach of contract claim (either based upon the written contract or oral contract) is found to be legally infirm, the Court concludes that Circle Y would prevail under the alternative theories

of quantum meruit and unjust enrichment. *See* O.C.G.A. § 9-2-7; *Langford v. Robinson*, 272 Ga. App. 376, 380, 612 S.E.2d 552, 556 ("A party cannot receive and retain the benefit of another's labor without the duty to pay for the reasonable value of the work").

Defendants benefited in an amount equal to at least $66,264.64 as a result of Circle Y's work, and as a consequence Circle Y is entitled to a judgment in that amount, plus expenses of litigation which are recoverable pursuant to O.C.G.A. § 13-6-11.

### D.    **Defendants' Bad Faith**

As the Court stated at the conclusion of the trial, Defendants acted in bad faith within the meaning of O.C.G.A. § 13-6-11. Bad faith has been defined as "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake, but prompted by some sinister motive." *ADP-Fin. Computer Servs., Inc. v. First Nat'l Bank*, 703 F.2d 1261, 1267 (11th Cir. 1983). Bad faith warranting an award of attorneys' fees "may be found in defendants carrying out the provisions of the contract, that is, in how defendant acted . . . in his dealing with the plaintiff." *Young v. A.L. Anthony Grading Co.*, 225 Ga. App. 592, 593, 484 S.E.2d 318, 319 (1997).

The Court, as the fact-finder, exercised its prerogative to disbelieve Defendants' witnesses' refutation that they did not authorize the work, and there is evidence that Defendants were acting with sinister motive by attempting to avoid payment in bad faith for work that its employees clearly authorized. *See Wheat Enters., Inc. v. Redi-Floors, Inc.*, 231 Ga. App. 853, 857, 501 S.E.2d 30, 35 (1998). Defendants acted in bad faith in the modification of the written contract and the formation of the oral contracts. WRH Realty Services had personnel on the ground who were instructing Circle Y to perform additional work to meet Defendants' goal to increase occupancy. Yet Defendants continued to rely upon a provision in the written contract that made Brown the exclusive person who could request the additional work despite Brown's absence and his clear delegation of authority to the personnel on the ground. *See id.* at 856-57, 501 S.E.2d at 35 (holding that some evidence supported the jury's award of attorney's fees based on its right to disbelieve the defendant's testimony).

Defendants manipulated Greg Young by trying to hide behind the legal documents, yet accepted the benefit of the work that was authorized by various employees of WRH Realty Services and performed by Circle Y.

Defendants took the untenable position that Circle Y was entitled to only the amount listed in the contract and that Circle Y assumed the risk of additional work being needed even though it was clear that Defendants' employees ordered Circle Y to perform substantial additional work. Defendants acted in bad faith by refusing to pay the invoiced amount for the extra work, which they expressly requested and for which they were liable.

Defendants were aware that the materials and labor for the invoiced work had to be paid by Circle Y, a small contractor, out of pocket, and calculated that if they waited long enough Circle Y would agree to their pennies-on-the-dollar offer due to the financial pressures a small contractor faces in these difficult economic times.

Frankly, Defendants lost all judgment as to what is fair and just. Defendants appeared to be detached from reality and fundamental notions of justice during the trial of this case. For all of these reasons, the Court finds that Defendants acted in bad faith within the meaning of § 13-6-11, and therefore Circle Y is entitled to its expenses of litigation. Although Defendants are presumably displeased that a case involving approximately

$65,000 in damages will result in a verdict well in excess of $200,000, they have no one to blame but themselves.

## V.   **Attorneys' Fees**

Finally, the Court must assess the reasonableness of Circle Y's fee request.   Circle Y seeks a total of $196,152.87 in attorneys' fees and expenses, which is comprised of well over one thousand hours of work at hourly rates ranging from $85 to $185.  Defendants argue that the amount requested is unreasonable.

As a threshold matter, the Court admonishes Defendants for failing to follow the Court's instructions on this issue.  At the close of the trial, the Court stated that if Defendants sought to challenge the reasonableness of the amount of fees requested by Circle Y, their lead counsel should file an affidavit attesting to the amount of their own fees incurred in this action.[3] Defendants ignored this directive without any explanation.  On this basis alone, the Court may reject Defendants' challenge to Circle Y's fee application.    Nevertheless, when the Court considers Defendants' arguments, the Court finds that they lack merit.

_____

[3] The Court finds that under Georgia law, evidence of one party's attorney's fees can be used to demonstrate the reasonableness of the other party's attorney's fees. *See N.D.T., Inc. v. Connor*, 196 Ga. App. 314, 316, 395 S.E.2d 901, 904 (1990).

Referred to as the "lodestar calculation," "[t]he starting point in fashioning an award of attorneys' fees is to multiply the number of hours reasonably expended by a reasonable hourly rate." *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Additionally, it is well settled that a court "is itself an expert on the question [of attorneys' fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Defendants do not contest that the rates requested by Circle Y's attorneys are reasonable, and the Court agrees that the rates are reasonable. The Court may thus move on to the next step of the lodestar analysis.

"The next step in the computation of the lodestar is the ascertainment of reasonable hours." *Norman*, 836 F.2d at 1301. The Supreme Court in *Hensley* instructed that "excessive, redundant, or otherwise unnecessary" hours should be excluded from the amount claimed. 461 U.S. at 434. Fee applicants must demonstrate "billing judgment," meaning that the "hours

excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation, and experience of counsel.*" *Norman*, 836 F.2d at 1301 (citing *Hensley*, 461 U.S. at 434) (emphasis in original).

Defendants do not question that the work referenced on the billing sheets was actually performed.   However, as noted above, Defendants maintain that the amount of fees requested are unreasonable.

Defendants argue at the outset that the affidavit of Circle Y's lead counsel, James H. Fisher, contains inadmissible statements as to the billings records of other attorneys in his firm, including Denise Spitalnick, Joel McKie, Jeannine Austin, Jacqueline Claxton, and Lauren Kaplan.   In essence, Defendants argue that Fisher's affidavit is not based on personal knowledge because he testifies as to the billing records of other attorneys.

The Court rejects Defendants' argument.   Defendants have failed to offer any reason why Fisher's statements regarding the billing entries of the attorneys he supervised are not trustworthy or are not based upon his personal knowledge.   Indeed, Fisher testified uncontrovertibly that he supervised the work of the attorneys that is reflected in the billing statements and that he has personal knowledge of and familiarity with the

work they performed.  This is sufficient under controlling law.  *See Santora v. Am. Combustion, Inc.*, 225 Ga. App. 771, 774-76, 485 S.E.2d 34, 37-39 (1997); *Oden v. Legacy Ford-Mercury, Inc.*, 222 Ga. App. 666, 668-69, 476 S.E.2d 43, 45 (1996); *Mitcham v. Blalock*, 214 Ga. App. 29, 32, 447 S.E.2d 83, 86 (1994).

Defendants also argue that Circle Y cannot recover fees or expenses associated with claims on which it did not prevail.  Although this is generally true, as the Court noted at the close of the trial, this case is controlled by *Campbell v. Beak*, 256 Ga. App. 493, 498, 568 S.E.2d 801, 806 (2002).  There, the Georgia Court of Appeals explained that due to the similarity of the three claims upon which the plaintiff prevailed with those upon which the defendants prevailed at the summary judgment stage of the litigation and the difficulty of further apportioning the attorneys' fees, it was impossible to further separate the hours spent on the prevailing claims from the hours spent on the non-prevailing claims.

Similarly, given the overlapping nature of all of Circle Y's claims, the Court finds that Circle Y's billing records reflect that it did as well as anyone could have done under the circumstances to separate out the hours spent on the prevailing claims from the hours spent on the non-prevailing claims.

At the close of the trial, the Court itself acknowledged the difficulty in apportioning the attorneys' fees in this case, finding that "apportionment is not necessary simply because I cannot imagine how it would be possible to apportion fees among these three claims upon which the plaintiff prevailed."

Circle Y followed the instructions of the Court by deducting any fees related to the claims upon which summary judgment was granted in favor of Defendants. Circle Y's counsel testified that it was impossible to further separate the hours spent on the prevailing claims from the hours spent on the non-prevailing claims. Defendants offered no evidence to refute this testimony. Based upon the Court's previous conclusions regarding apportionment of fees and the absence of contrary evidence as to what would be an appropriate reduction, Defendants' argument regarding the impropriety of Circle Y's reduction fails.

Moreover, throughout their challenge to Circle Y's fee application, Defendants appear to misunderstand that the verdict in this action granted Circle Y all of the relief that it sought. Indeed, the Court described the result as a "wholesale victory for Circle Y" and explained:

> But the record should further reflect that even if for some
> reason count one were not a viable means of recovery, I would

find that count two should be a count in Plaintiff's favor under the oral contract theory. And similarly, if that theory for some reason had some legal infirmity that prevented success by the Plaintiff, I would find that the Plaintiff was entitled to recovery in quantum meruit for all of these same sums on all three counts.

Defendants also contend that Circle Y failed to exercise proper billing judgment because even as voluntarily reduced, its fee application fails to excise all duplicative and excessive hours. In particular, Defendants point out that Circle Y's fee application requests that Defendants pay for the presence of a third attorney, Joel McKie, at the trial of this matter. According to Defendants, Fisher and Spitalnick were the only attorneys who actively participated in the trial proceedings on behalf of Circle Y. Defendants therefore maintain that McKie's presence was redundant and unnecessary.

The Court rejects Defendants' attempt to minimize the contribution that McKie made during the trial. In *Johnson v. University College of University of Alabama*, 706 F.2d 1205, 1208 (11th Cir. 1983), the Eleventh Circuit noted that the use "of a team of attorneys who divide up the work is common today for both plaintiff and defense work." A reduction in a fee therefore "is warranted only if the attorneys are unreasonably doing the

same work." *Afro-American Patrolmen's League v. City of Atlanta*, 817 F.2d 719, 726 (11th Cir. 1987).

Defendants have failed to offer any evidence that the work of Circle Y's trial attorneys deviates from the customary practice of multiple-lawyer litigation. Defendants offer conjecture and speculation that having a third attorney present at trial with specific assigned tasks is unreasonable. Moreover, Defendants appear to forget that *they* also had three attorneys present during the trial. For all of these reasons, the Court is unpersuaded by Defendants' argument.

Additionally, according to Defendants, the billing entries produced by Circle Y in support of its fee application are vague and undefined. The Court has reviewed the billing statements and disagrees. The billing records submitted by Circle Y clearly meet the standards set forth in *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402, 433 S.E.2d 606, 607 (1993).

Finally, Defendants object to essentially all portions of Circle Y's fee application that seek reimbursement for the use of paralegals. However, Defendants' argument is based upon a footnote in *Jones v. Armstrong Cork Co.*, 630 F.2d 324, 326 n.1 (5th Cir. 1980), in which the court stated that a

party can recover paralegal's time as long as it was for work "that has traditionally been done by an attorney."

There is no allegation that Circle Y's paralegal staff engaged in merely clerical duties. Defendants do not cogently explain why the billing entries in this case attributed to paralegals were not made in connection with work traditionally performed by attorneys, and the Court can find no reason to exclude this time from Circle Y's fee application. Indeed, as the Eleventh Circuit has noted, it would be counterproductive to exclude reimbursement for paralegal work because it "might encourage attorneys to handle entire cases themselves, thereby achieving the same results at a higher overall cost." *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir. 1988).

Finally, Defendants assert that certain charges are not recoverable under O.C.G.A. § 13-6-11, specifically travel costs, such as mileage, airfare, meals and hotel stays. Defendants cite no case law that holds that these types of expenses are not included in the phrase "expenses of litigation." Accordingly, the Court rejects this argument as well. *Accord Salsbury Labs., Inc. v. Merieux Labs., Inc.*, 908 F.2d 706, 716 (11th Cir. 1990) (finding "expenses of litigation" to be a "broad term" such that it even

allows a party to recover for the time spent by its in-house attorney personnel in preparation for litigation).

For all of these reasons, the Court rejects Defendants' arguments contesting the reasonableness of Circle Y's fee application. The Court has carefully reviewed Circle Y's fee application and finds that it is reasonable and reflects billing judgment. The Court will therefore award Circle Y the full amount of fees that it seeks, which is $196,152.87.

## VI.  **Judgment**

For the foregoing reasons, the CLERK is DIRECTED to enter judgment against Defendants and in favor of Circle Y in the principal amount of $66,264.64 plus $196,152.87 in attorneys' fees and costs. Circle Y is also entitled to prejudgment interest on the principal amount pursuant to O.C.G.A. § 7-4-2 in the amount of $12,098.33.[4] The CLERK is further DIRECTED to close this case.

---

[4] Pursuant to O.C.G.A. § 7-4-2, Circle Y is entitled to prejudgment interest at the rate of seven percent per annum. In Circle Y's proposed findings of fact and conclusions and its supplement thereto, Circle Y provides a computation of the amount of prejudgment interest that it seeks. Specifically, Circle Y states that through June 9, 2010, it is entitled to prejudgment interest in the amount of $10,721.06 on the original invoiced amount and $1,008.68 on the un-invoiced appliances. Circle Y further requests that for each additional day after June 9, it receive an additional $11.62 in interest on the original invoiced amount and an additional $1.09 in interest on the un-invoiced appliances. Defendants do not dispute these computations. Circle Y is therefore entitled to prejudgment interest in the amount of $11,058.04 on the original

IT IS SO ORDERED this 8th day of July, 2010.

Timothy C. Batten, Sr.
United States District Judge

invoiced amount and $1,040.29 on the un-invoiced amount, for a total prejudgment interest award of $12,098.33.